# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JANET MARCELL LEE,           )
           )
PLAINTIFF,           )     No.  3:12-00506
           )     **Judge Nixon/Brown**
v.           )
           )
MICHAEL J. ASTRUE,           )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION           )
           )
DEFENDANT.           )

**To:  The Honorable Judge John T. Nixon, Senior United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained herein, the Magistrate Judge **RECOMMENDS** that the plaintiff's motion for judgment on the administrative record (the record) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

## I.      Procedural History

The plaintiff protectively filed for Disability Insurance Benefits (DIB) on October 11, 2007 (DE 9, pp. 164-66; 176).[1] She claimed an onset date of August 03, 2006 (DE 9, p. 176). The plaintiff claimed disability due to carpal tunnel, nerve damage, a back injury, acid reflux, sleeping problems, nervousness, high blood pressure, and high cholesterol (DE 9, p. 180). On January 22, 2008, the Commissioner denied the claim (DE 9, p. 71). On February 21, 2008, the plaintiff timely filed for reconsideration (DE 9, p. 79). On August 01, 2008, the Commissioner again denied the claim (DE 9, p. 81). On August 06, 2008, the plaintiff timely requested a hearing before an Administrative Law Judge (ALJ) (DE 9, p. 83). On July 13, 2010, the plaintiff appeared before the ALJ, Roy J. Richardson (DE 9, pp. 43-67). Also appearing were Susan

---

1 Page numbers refer to the Bates Stamp.

Brooks, the vocational expert (VE), and Chris George (Mr. George), the plaintiff's representative, (DE 9, p. 43). On September 02, 2010, the ALJ decided that the plaintiff was not disabled under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(i) and 423(d) (DE 9, p. 38). On September 14, 2010, the plaintiff timely requested that an Appeals Council (AC) review the decision (DE 9, p. 24). On March 23, 2012, an AC denied the request (DE 9, p. 1). On May 18, 2012, the plaintiff timely brought the instant action (DE 1). On August 07, 2012, the defendant filed his answer and the record (DE 8-9). On September 07, 2012, the plaintiff filed the motion for judgment on the record (DE 11) and memorandum in support of the motion pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the final decision of the Social Security Administration (the SSA), through its Commissioner, as set out by the ALJ. On December 07, 2012, the defendant filed a response in opposition (DE 16). The matter is now properly before the Court.

## II.       Review of the Record

### A.       Relevant Medical Evidence

On April 25, 2005, the plaintiff presented to Dr. John Bacon for treatment of left carpal tunnel syndrome (DE 9, p. 351). Dr. Bacon placed the following restrictions on the plaintiff:  "no repetitive use of the left hand, wear[ing] a wrist splint, no lifting greater than 10 pounds, no bending, no twisting." (DE 9, p. 351). On May 11, 2005, the plaintiff underwent left carpal tunnel release with Dr. Bacon (DE 9, p. 375). Through May and June 2005, the plaintiff had similar restrictions for her left wrist and hand (DE 9, pp. 365-67; 380).

On June 23, 2006, the plaintiff underwent left trigger thumb release with Dr. Bacon (DE 9, p. 614). On July 14, 2006, Dr. Bacon placed the following restrictions on the plaintiff: "limited use of the left hand, no lifting greater than 5 to 10 pounds," and these restrictions

remained consistent through December 2006 (DE 9, pp. 354-55; 363; 361-62; 371). On July 24, 2006, the plaintiff underwent a Magnetic Resonance Imaging (MRI) of the lumbar spine, which revealed "[n]o significant narrowing of the…spinal canal…minimal [disc] bulge." (DE 9, p. 265). On August 06, 2006, the plaintiff presented to Hope Family Health Services (HFHS) for back pain and right leg pain, where she was prescribed medication (DE 9, pp. 319-20). On August 10, 2006, the plaintiff presented to Dr. Jeffrey Hazlewood on referral from Dr. Bacon for nerve and muscle electrodiagnostic testing of her arms (DE 9, p. 357). Dr. Hazlewood found that the plaintiff had "very mild right…carpal tunnel syndrome, and mild left…carpal tunnel syndrome." (DE 9, p. 357). Dr. Hazlewood also found that it was "very possible that the minimal carpal tunnel syndrome seen electrodiagnostically [were] old residual findings [after] successful carpal tunnel release." (DE 9, p. 357). On September 05, 2006, the plaintiff presented to HFHS for medication refills (DE 9, p. 318).[2]

On September 19, 2006, Dr. Bacon evaluated the plaintiff for an on the job injury to her lower back and provided her with a back brace to wear at work (DE 9, p. 338). On December 05, 2006, Dr. Bacon reported that the plaintiff had permanent impairment to 5% of her "[whole] person." (DE 9, p. 353).

On April 23, 2007, Dr. Bacon reported that the plaintiff had a permanent impairment to 5% of her left arm (DE 9, p. 352). On August 24, 2007, Dr. Bacon restricted the plaintiff to "no bending, no lifting greater than 15 pounds, no twisting." (DE 9, p. 275).

On March 14, 2008, in response to a letter from the plaintiff's attorney at the time, Dr. Bacon wrote that the plaintiff had bilateral carpal tunnel syndrome and low back pain, that it was

2 The plaintiff returned to HFHS for monthly visits, laboratory testing, and medication refills through December 2006, from March through November 2007, February and May 2008, September through November 2008, January, March, May, September, and December 2009, and February 2010 (DE 9, pp. 278; 281; 283; 285; 288; 294; 296; 298; 300; 306; 309; 314; 316; 486; 490; 540; 546; 548; 550; 552; 554; 556; 558; 562; 566).

his opinion that these resulted from the plaintiff's work activities, that the plaintiff had a permanent 5% impairment of the arms and a permanent 5% impairment of the "person as a whole for her lumbar spine." (DE 9, p. 499). Dr. Bacon also wrote that the plaintiff "will have permanent restrictions…no bending, lifting, or twisting, and she should not do repetitive activities with her [arms]." (DE 9, p. 499). On July 01, 2008, in response to a letter from a worker's compensation claim representative, Dr. Bacon wrote that the plaintiff's treatment consisted of splints and medication, that her need for treatment was directly related to a 2006 injury because of continuing symptoms related to carpal tunnel syndrome, and that he anticipated that the plaintiff would need lifetime care and medication for the injury (DE 9, p. 609).

On July 28, 2009, the plaintiff presented to the Sumner Hospital (Sumner) ED with back pain, and was treated with pain medication (DE 9, pp. 612-13). On September 02, 2009, the plaintiff underwent a MRI, which revealed "mild degenerative disk disease…no disk herniation…." (DE 9, P. 617).

### B.      Consultatative Examiner Assessments

On January 07, 2008, the plaintiff presented to Dr. Albert Gomez (Dr. Gomez) for a consultative medical examination on behalf of Tennessee Disability Determination Services (DDS) (DE 9, pp. 383-86). Dr. Gomez found that the plaintiff could "occasionally lift 20 pounds in an 8 hour workday…[and] stand or sit at least 6 hours in an 8 hour workday with normal breaks." (DE 9, p. 385).  Dr. Gomez also found that the plaintiff had chronic low back pain, degenerative joint disease, and carpal tunnel syndrome (DE 9, pp. 385-86).

On January 09, 2008, the plaintiff presented to Eugene Smith (Mr. Smith) for a consultative psychological examination on behalf of DDS (DE 9, p. 387-93). Smith found that the plaintiff would have "mild to moderate limitation in her ability to interact in an emotionally

stable fashion with supervisor[s], peers or public…Otherwise, she [would be] able to focus…adequately…[and] complete …sequential task duties. She would have difficulty in maintaining and sustaining across a usual workday because of her depression." (DE 9, p. 392).[3]

## C.    Testimonial Evidence

### 1.    Plaintiff and Witness Testimony

On July 13, 2010, the plaintiff testified on direct examination by the ALJ (DE 9, p. 46). She testified that she had not done any work since August 03, 2006 and that she supports herself financially through disability payments that her husband receives (DE 9, pp. 46-47). The plaintiff testified that she has a seventh grade education, does not have a General Education Degree (GED), can read and write, and can add and subtract (DE 9, p. 47).

The plaintiff testified that she is precluded from working due to numbness and tingling in her hands and arms that occurs 4 to 5 times  day, depending on her activity (DE 9, p. 48). The plaintiff also testified that she is precluded from working due to constant pain in both legs that lasts until she takes medication or rests (DE 9, pp. 48-49). The plaintiff testified that sweeping floors or washing dishes causes the symptoms in her arms, hands, and legs (DE 9, pp. 48-49).

The plaintiff testified that Dr. Bacon had prescribed and that she takes Hydrocodone, Soma, and Neurontin medication for pain (DE 9, p. 49). The plaintiff testified that she also takes medication for depression and that she is depressed "about the situation because [she is] not able to work." (DE 9, p. 49). The plaintiff testified that she has crying spells monthly, but that she does not have suicidal thoughts (DE 9, p. 50). The plaintiff testified that she cooks, does

3 The court takes notice of several additional non-examining assessments. On January 17, 2008, George Livingston, Ph.D. completed a Psychiatric Review Technique and a Mental RFC Assessment (DE 9, pp. 394-411). On January 22, 2008, Dr. James Moore completed a Physical RFC Assessment (DE 9, pp. 412-19). On June 16, 2008, Rebecca Joslin, Ed.D. completed a Psychiatric Review Technique and Mental RFC Assessment (DE 9, pp. 502-19). On July 31, 2008, Dr. Reeta Misra completed a Physical RFC Assessment (DE 9, pp. 520-27). Neither party raises these assessments as being applicable to the instant case, and the Court does not include them in the analysis herein or otherwise construe their relevancy to the ALJ's determination.

housework, does laundry, goes grocery shopping, and drives up to 12 to 15 miles, but does not perform yard work (DE 9, p. 51).

The plaintiff testified that she can sit or stand for 45 minutes to one hour at a time, and can walk for 15 minutes (DE 9, pp. 51-52). The ALJ asked the plaintiff, "Do you have any problems lifting and carrying things?" (DE 9, p. 52). The plaintiff responded that she does have problems and that she can lift and carry "maybe 10 pounds." (DE 9, p. 52). The plaintiff testified that she has no problems dressing or bathing (DE 9, p. 52). The plaintiff testified that she does not have any social activities, visits with friends occasionally, visits with family, and is unable to care for her grandchildren (DE 9, pp. 52-53).

Mr. George next gave an opening statement in which he indicated that the plaintiff had a surgical history, was being treated by Dr. Bacon for her work-related injury, was under permanent restrictions per Dr. Bacon's orders not to bend, lift, twist, or do repetitive activities with her arms, and had difficulty sitting down during her psychological consultative examination, where Mr. Smith opined that the plaintiff would have difficulty concentrating because of her depression (DE 9, pp. 53-54).

The plaintiff then testified that she has problems "remembering to do things, concentrating, [and] completing tasks" because of her depression (DE 9, p. 55). Specifically, the plaintiff testified that her husband must remind her to take her medicine and that she forgets to do daily tasks such as letting her dogs out (DE 9, p. 55). The plaintiff testified that she "[does not] like being around a lot of people" (DE 9, p. 57). The plaintiff testified that she is unable to care for her grandchildren because she cannot pick them up and because "they kind of get on [her] nerves" when they are crying (DE 9, p. 57).

The plaintiff testified that she is unable to cook, do housework, and do laundry *simultaneously* because of her back pain and the numbness in her hands (DE 9, p. 56). She testified that she can perform an activity for 30 to 45 minutes before needing to rest, and that she must rest for 10 to 15 minutes before resuming an activity (DE 9, p. 56). The plaintiff testified that, in order to alleviate her back pain, she will "[lie] down and rest for a while." (DE 9, p. 56). She testified that doing this helps alleviate her back pain and that she does so daily for 30 minutes, once or twice during the day, depending on how active she is (DE 9, pp. 56-57). The plaintiff testified that she can perform activities such as sweeping the floor, washing dishes, and folding laundry for 30 minutes before she experiences numbness and tingling in her hands, and that she must take a 10 minute break before she can use her hands again (DE 9, p. 58). The plaintiff testified that, in order to alleviate the numbness and tingling, she will "stretch [her hands]…shake them, and…hold them down to [her] sides." (DE 9, p. 58). She testified that, while she stated she was able to pick up 10 pounds, that this requires both hands (DE 9, p. 59).

## 2. Vocational Expert Testimony

The VE testified that the plaintiff's past work as a cook helper is medium, unskilled work with an SVP of 2;[4] that the plaintiff's past work as a short order cook is light, unskilled work with an SVP of 2, and that the plaintiff's past work as a cable maker is light, semi-skilled work with an SVP of 3 (DE 9, p. 59).

The ALJ then presented the VE with hypothetical scenarios, considering a hypothetical person of the same age, education, and work history as the plaintiff, but with varying Residual Functional Capacity (RFC):

---

4 SSR 00-4P, 2000 WL 1898704 ("The Dictionary of Occupational Titles (DOT) lists a **specific vocational preparation (SVP)** time for each described occupation. Using the skill level definitions in 20 C.F.R. §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.") (emphasis added).

The first hypothetical would limit the person to lifting and carrying 15 pounds occasionally, and lifting and carrying 10 pounds frequently; standing and/or walking 6 hours of an 8 hour day; pushing and pulling limited to 10 to 15 pounds, occasionally climbing stairs and ramps, not climbing ropes, ladders, or scaffolds, occasionally stooping, kneeling, crouching, and crawling, frequent but not constant handling, fingering, and feeling. Due to mental limitations, the hypothetical person would be limited to understanding, remembering, and carrying out routine step instructions; would be able to respond appropriately to supervisors and co-workers in jobs that do not require independent decision making.

(DE 12, p. 56). Pertaining to this hypothetical, the VE testified that the plaintiff's past work could not be performed with these limitations (DE 9, pp. 60-61). Besides her past work, the plaintiff could work as (a) a leaf tier, which is sedentary, unskilled work with an SVP of 1, with 1,300 employed in Tennessee and 47,000 employed nationally in this job; (b) a production worker, such as a final assembler, which is sedentary, unskilled work with an SVP of 1 or 2, with 560 employed in Tennessee and 18,000 employed nationally in this job; (c) an "ampoules (phonetic) dealer," which is sedentary, unskilled work with an SVP of 2, with 490 employed in Tennessee and 21,700 employed nationally in this job.

The second hypothetical would include the same limitations as those in the first hypothetical, with the addition of a person who has the mental capacity to perform work where interpersonal contact is incidental to the work performed.

(DE 12, pp. 61-62). Pertaining to this hypothetical, the VE testified that there would be no impact on the jobs identified.

The ALJ asked the VE whether, if he "found that the evidence supported the assertion that the…individual…would be unable to lift, bend, or twist, could these jobs be performed?" (DE 9, p. 62). The VE testified that since the jobs listed do require lifting, that she "could not identify any competitive employment" if the hypothetical person was unable to lift (DE 9, p. 62).

The third hypothetical included the same limitations as those in the first hypothetical, with the addition of a person limited to less than frequent reaching, handling, fingering, or

feeling (DE 9, p. 64). Pertaining to this hypothetical, the VE testified that she "would not be able to identify any competitive employment." (DE 9, p. 65). Mr. George asked the VE about Mr. Smith's assessment and whether an individual with the limitations described therein would be able to perform competitive work (DE 9, p. 65). The ALJ indicated that the report of Mr. Smith, if supported by the evidence, "would preclude competitive work…by definition." (DE 9, p. 65). Mr. George attempted to ask the VE whether an individual with the limitations as testified to by the plaintiff would be able to perform any competitive work (DE 9, p. 66). However, the ALJ would not allow this line of questioning (DE 9, p. 66).

### III.        Analysis

### A.        Standard of Review

The issue before the Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is limited to whether there is substantial evidence in the record to support the Commissioner's findings of fact. "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010) (quoting *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). The Court "may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Carrelli*, 390 F. App'x at 434.   If there is "substantial evidence" in the record that supports the Commissioner's decision and the Commissioner applied the correct legal standard, then the Court must affirm the Commissioner's final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [plaintiff's] position." *Id.* (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

## B.    Administrative Proceedings

Disability is defined for Title II DIB claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ uses a five-step sequential evaluation for DIB claims to determine whether the plaintiff meets this definition of "disabled." 20 C.F.R. § 404.1520(a)(4)(i)-(v).

i.    If the plaintiff is engaged in substantial gainful activity, the Court will find that the plaintiff is not disabled.

ii.    If the plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the plaintiff is not disabled.

iii.    If the plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the plaintiff is disabled.

iv.    The court considers the plaintiff's RFC and past relevant work. If the plaintiff can still perform their past relevant work, the Court will find that they are not disabled.

v.    The Court considers the plaintiff's RFC, age, education, and experience to determine if the plaintiff can perform work *other than* past relevant work. If the plaintiff can make an adjustment, the Court will find that they are not disabled.

The plaintiff has the burden of proof for steps one to four. *Carrelli*, 390 F. App'x at 435. The burden shifts to the Commissioner at step five, where the Commissioner must "identify a significant number of jobs in the economy that accommodate the [plaintiff's] RFC and vocational profile." *Id.* To meet the burden, the ALJ may use the medical-vocational guidelines in 20 C.F.R. pt. 404, Subpt. P, App. 2 (Appendix 2). 20 C.F.R. § 404.1569.

Appendix 2 is referred to as "the grid," and provides guidance to the ALJ in determining whether the plaintiff is disabled or whether significant numbers of *other* jobs exist for the

plaintiff. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). "Where the findings of fact made with respect to a particular individual's vocational factors and RFC coincide with all of the criteria of a particular rule [in the grid], the rule directs a conclusion as to whether the individual is or is not disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (quoting Appendix 2 at § 200.00(a)). Otherwise, instead of using the grid alone, the ALJ must consider all relevant facts. 20 C.F.R. § 404.1569.

### C.  Administrative Reliance on Vocational Expert Testimony

If a plaintiff's limitations "do not satisfy the exact requirements of the medical-vocational guidelines, the ALJ [is] entitled to rely on the testimony of a VE in reaching his decision" as to whether the plaintiff is disabled or whether the plaintiff is not disabled and a significant number of jobs exist that the plaintiff can perform. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004). If an "issue in determining whether [a plaintiff] is disabled is whether [their] work skills can be used in other work and the specific occupations in which they can be used…, [the ALJ] may use the services of a VE…." 20 C.F.R. § 404.1566(e).

What number of jobs in the national economy constitutes a "significant number" of jobs is a determination that must be made on a case-by-case basis. *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990) (citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir. 1988)). The ALJ may consider "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id.*

### D.    Notice of Decision

On September 02, 2010, the ALJ denied the plaintiff's claims and made the findings of fact and conclusions of law enumerated below.

1. Claimant meets the insured status requirements of the Act through December 31, 2011.

2. Claimant has not engaged in substantial gainful activity since August 03, 2006, the alleged onset date.

3. Claimant has the following severe impairments:  degenerative disc disease, carpal tunnel syndrome, depression, and anxiety.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1.

5. Claimant has the RFC to lift and carry 15 pounds occasionally, less than 10 pounds frequently, to sit, stand and/or walk for 6 of 8 hours. Pushing and pulling are limited to the weights given. The claimant can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant can only occasionally stoop, kneel, crouch, and crawl. The claimant can perform frequent but not constant handling, fingering, and feeling. From a mental standpoint, the claimant is able to understand, remember and carry out routine step instructions, and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making. Interpersonal contact must be only incidental to the work performed.

6. Claimant is unable to perform any past relevant work.

7. Claimant was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case.

10. Considering the claimant's age, education, experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. Claimant has not been under a disability as defined in the Act from August 03, 2006, through the date of the decision.

(DE 9, p. 31-38). On December, the ALJ made the specific decision below.

1. Based on the application for a period of disability and DIB protectively filed on October 11, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Act.

(DE 12, p. 38).

## IV. Claims of Error

### A. The Residual Functional Capacity is not Supported by Substantial Evidence

The plaintiff argues that the ALJ erred in determining the plaintiff's RFC because the ALJ "did not properly assess the limitations given to the [p]laintiff by her treating physician, Dr. Bacon, nor the Psychological Examine[r], Eugene Smith." (DE 11, p. 6). The plaintiff argues that the ALJ's RFC determination is in error because Dr. Bacon indicated that the plaintiff had permanent limitations and that the VE could not identify employment in consideration of those limitations (DE 11, p. 5). The plaintiff also argues that the ALJ's RFC determination is in error because Mr. Smith indicated that the plaintiff's depression would preclude her from working a usually workday and that the VE was not allowed to testify about this point (DE 11, p. 6).

The ALJ determines the plaintiff's RFC based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). Included in such relevant evidence are: (1) the plaintiff's medical history for, at a minimum, the 12 months before the month when the plaintiff filed; (2) medical reports from the plaintiff's medical sources; (3) consultative examination reports at the expense of the SSA; (4) statements from medical sources[5] about what the plaintiff can do; (5) descriptions of the plaintiff's limitations, including symptom-based limitations, from the plaintiff, family, or others. 20 C.F.R. § 404.1545(a)(3).

When an ALJ reviews "medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians,

---

[5] 20 C.F.R. § 404.1513(a) (Acceptable medical sources are (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists….).

commonly known as the ***treating physician rule***." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (emphasis added) (citing SSR 96–2P, 1996 WL 374188; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004)).

The ALJ determines the weight to give to medical opinions according to the treating physician rule, pursuant to 20 C.F.R. § 404.1527(c)(2). Under this rule, "[i]f [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the plaintiff's] impairment(s) is well-supported…and is not inconsistent with the other substantial evidence…, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *Wilson*, 378 F.3d at 544. A "treating source" is a plaintiff's "own physician, psychologist, or other acceptable medical source who provides…or has provided…medical treatment or evaluation and who has, or has had, an ongoing treatment relationship[6] with [the plaintiff]." 20 C.F.R. § 404.1502. A "[n]on-treating source" "includes…a consultative examiner…, when the consultative examiner is not [the plaintiff's] treating source." 20 C.F.R. §§ 404.1502 and 404.1527. "There is an additional procedural requirement associated with the treating physician rule [whereby]…the ALJ must provide '***good reasons***' for discounting treating physicians' opinions…." *Rogers*, 486 F.3d at 242 (emphasis added). "Importantly, though, this reasons-giving requirement exists only for § 404.1527([c])(2),[7] and not for the remainder of § 404.1527([c])." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). In other words, the procedural good reasons rule applies only to the extent that an ALJ discounts the opinion of "*treating* sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith*, 482 F.3d at 876); *See also Norris v.*

---

6 20 C.F.R. §§ 404.1502 and 416.902 (An "ongoing treatment relationship" is a relationship for which "the medical evidence establishes that [the plaintiff] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s). [An ALJ] may consider an acceptable medical source who has treated or evaluated [a plaintiff] only a few times or only after long intervals…to be [the] treating source if the nature and frequency of the treatment or evaluation is typical for [the] condition(s).").

7 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (current version at 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (2012)).

*Comm'r of Soc. Sec.*, 461 F. App'x 433, 438-40 (6th Cir. 2012). "This **procedural 'good reasons' rule** serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case." *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 474 (6th Cir. 2012) (emphasis added) (citing *Rogers*, 486 F.3d at 242).

If an ALJ **does not** give a treating source's opinion controlling weight, then the ALJ must consider all of the following factors in deciding what discounted weight to give to the treating sources's opinion:  (c)(1) examining relationship; (c)(2)(i) length of the treatment relationship and frequency of examination; (c)(2)(ii) nature and extent of the relationship; (c)(3) supportable medical evidence; (c)(4) evidence that is consistent with the record; (c)(5) specialization; and (c)(6) other factors. 20 C.F.R. § 404.1527(c). The ALJ will also consider these factors when determining what weight to give to the opinion of a non-treating or non-examining source even though those opinions "are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013).

The ALJ's "assessment of the medical evidence…is particularly important at Step 5…" because the RFC is used "to assess the [plaintiff's] ability to perform work." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). In order for the ALJ to appropriately consider the plaintiff's ability to perform work, and in order for "a VE's testimony to constitute substantial evidence that a significant number of jobs exist, 'the [ALJ's] question[s] must accurately portray a [plaintiff's]…impairments.'" *Cole*, 661 F.3d at 939 (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)). Therefore, even if a treating physician's opinion is not ultimately "accorded controlling weight as to [the plaintiff's] RFC, the ALJ [still has to]…go through the required analysis to arrive at that conclusion…." *Cole*, 661 F.3d at 939.

The record shows that the ALJ determined the plaintiff's RFC based on all relevant evidence in the record, in compliance with 20 C.F.R. § 404.1545(a)(3). The ALJ considered the (1) plaintiff's medical history. The plaintiff filed for DIB on October 11, 2007 (DE 9, pp. 164-66; 176) and the ALJ considered the plaintiff's medical record from as far back in time as March 2006 (DE 9, p. 34). The ALJ considered the (2) medical reports from the plaintiff's medical sources; including medical reports from Dr. Bacon, HFHS, and Sumner (DE 9, pp. 34-36, citing exhibits 2F, 4F, 5F, 12F, 13F, 19F, and 20F). The ALJ considered the (3) consultative examination reports of Dr. Gomez and Mr. Smith (DE 9, pp. 35-36, citing exhibits 6F and 7F). The ALJ considered the (4) statements from medical sources about what the plaintiff can still do, including statements from Dr. Bacon that the plaintiff could "work with [a] splint, cast, or brace," or "work at desk level or in [her] lap" as of September 15, 2006 with the restrictions of limited use of the left hand and no lifting greater than 5 to 10 pounds (DE 9, p. 361), and that the plaintiff could return to limited duty on August 24, 2007 with the restrictions of no bending, twisting, or lifting of greater than 15 pounds (DE 9, p. 275). Additionally, the ALJ considered that, at the plaintiff's psychological consultative examination, the plaintiff was able to "say the months of the year forward and backward, do simple mathematical calculations…[state series of digits in groups of three] backwards…focus her attention and concentration adequately and complete steps in sequential task duties (DE 9, p. 32).

The ALJ considered the (5) descriptions of the plaintiff's limitations, including her testimony at the hearing, where she testified:  that "due to carpal tunnel syndrome, her hands and arms get numb up to her elbows…;" that she has "constant low back pain [that]…radiates down both legs;" that she suffers from depression; that "she can sit for 45 minutes to an hour before having to change positions, can stand for the same amount of time, can walk for about 15

minutes, and can lift and carry 10 pounds;" that "she can perform household chores;"[8] and that "she can use her hands for about 30 minutes before they go numb." (DE 9, p. 34).

Therefore, the record provides substantial evidence that the ALJ appropriately considered all relevant evidence in the record when determining the plaintiff's RFC.

The record shows that the ALJ considered, as part of the relevant evidence in the record, the opinions of Dr. Bacon and Mr. Smith, in compliance with the treating physician rule. Regarding Dr. Bacon, the ALJ gave his opinion "little weight" (DE 9, p. 36) and considered the required factors of the procedural good reasons rule under 20 C.F.R. § 404.1527(c). The record shows that the ALJ considered the (c)(1) examining relationship and (c)(5) specialization of Dr. Bacon, acknowledging that Dr. Bacon was "the [plaintiff's] treating orthopedist." (DE 9, p. 36). The ALJ considered the (c)(2)(i) length of the treatment relationship and the (c)(2)(ii) nature and extent of the relationship, indicating that Dr. Bacon opined about the plaintiff's condition since 2006 and more recently in March 2008 (DE 9, pp. 34-36). The ALJ considered the lack of (c)(3) supportable medical evidence and lack of (c)(4) evidence that is consistent with the record, indicating that while Dr. Bacon stated that the plaintiff had permanent impairments and could not bend, lift, twist, or do repetitive activities, the medical evidence contradicted this opinion.

Among the contradictory medical evidence was the fact that the plaintiff had, in January 2008, "'mild' degenerative disc disease at L4-5 without evidence of stenosis or disc herniation," "'very mild' bilateral carpal tunnel syndrome," self-described "mild" lower back pain "consistent with the mild findings on imaging of her back," "moderate tenderness…of her cervical and lumbar spine, limited range of motion of her cervical and lumbar spine, and positive sitting straight leg raise…" but an otherwise normal examination, "full range of motion in her

---

8 As the defendant points out (DE 16, p. 8), the ALJ correctly reiterated the amount of time that the plaintiff testified she could sit, stand, walk, and use her hands, but inverted the amount of time she could perform chores with the amount of time she needed to rest (DE 9, p. 34).

shoulders, elbows and wrists, normal fine finger movements, normal fist making and pinch grip, "negative Tinel's[9] sign and Phalen's[10] signs," often used to test for carpal tunnel syndrome or symptoms of carpal tunnel, and the ability to "walk normally, stand on one leg, and get on and off the exam[ination] table with only moderate difficulty." (DE 9, p. 35). These findings came from the report of Dr. Gomez, who saw the plaintiff for a medical consultative examination in January 2008 (DE 9, p. 383), 5 months after Dr. Bacon restricted the plaintiff to "no bending, no lifting greater than 15 pounds, no twisting" in August 2007 (DE 9, p. 275) and 2 months before Dr. Bacon wrote that wrote that the plaintiff would "have permanent restrictions…no bending, lifting, or twisting, and she should not do repetitive activities with her [arms]" in March 2008 (DE 9, p. 499).

The record also shows that the ALJ considered that the plaintiff was "treated conservatively" for back and hand pain "throughout 2008, 2009, and 2010" by Dr. Bacon and at Sumner (DE 9, p. 35). In September 2009, a MRI ordered by Dr. Bacon revealed "only mild degenerative disc disease." (DE 9, p. 617) In July 2009, an examination at Sumner ED revealed "no midline tenderness, normal range of motion of [the plaintiff's] hips, and some tenderness of the left paraspinal muscles…." (DE 9, pp. 612-13).

Likewise, the ALJ noted that the plaintiff's own descriptions of her activities of daily living contradicted Dr. Bacon's opinion, including the fact that the plaintiff reported "bathing and dressing independently on a daily basis, cooking and doing housework, including laundry and grocery shipping, playing with her dog, and occasionally visiting friends." (DE 9, p. 36).

---

9 Dorland's Illustrated Medical Dictionary 1716 (Elsevier 2012) (1900) (Tinel's Sign:  a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve.).
10 Dorland's Illustrated Medical Dictionary 1896 (Elsevier 2012) (1900) (Phalen Test:  (for carpal tunnel syndrome) the size of the carpal tunnel is reduced by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds, or by placing a sphygmomanometer cuff on the involved arm and inflating to a point between diastolic and systolic pressure; appearance of numbness or paresthesias indicates carpal tunnel syndrome.).

The record shows that the ALJ also met the procedural good reasons rule requirement by explaining that the discounted weight given to the opinion of Dr. Bacon was based on the lack of the consistency with the record and the lack of support in the record for the opinion (DE 9, p. 36). Therefore, the record provides substantial evidence that the ALJ considered the opinion of Dr. Bacon according to the treating physician rule and determined that his opinion would not affect the plaintiff's RFC to the extent that the plaintiff otherwise argues it should have.

Regarding Mr. Smith, since he was not a treating physician, but was a non-treating consultative examiner, his opinion was never entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2) and the ALJ was not bound by the procedural good reasons rule. Despite this, the record shows that the ALJ explicitly gave the opinion "little weight" (DE 9, p. 37) and explained his rationale for doing so. The ALJ considered the lack of supportable medical evidence, indicating that while Mr. Smith stated that the plaintiff "would have difficulty maintaining full time work due to her depression," that this opinion was "neither consistent with nor supported by the findings on the consultative examiner's own mental status examination of the [plaintiff], or with the [plaintiff's] reported high level of activities of daily living." (DE 9, pp. 36-37). The ALJ noted the inconsistency between the opinion of Mr. Smith and the plaintiff's own rating of her depression as "only mild to moderate…." (DE 9, p. 37). Therefore, the record provides substantial evidence that the ALJ considered the opinion of Mr. Smith and determined that his opinion would not affect the plaintiff's RFC to the extent that the plaintiff otherwise argues it should have.

Regarding the ALJ's questioning of the VE, the record shows that the ALJ's questions portrayed the plaintiff's limitations. The ALJ directly asked the VE whether, if he "found that the evidence supported the assertion that the…individual…would be unable to lift, bend, or twist,

could [the identified] jobs be performed?" (DE 9, p. 62). However, the record provides substantial evidence that the ALJ appropriately considered the evidence and found that it did not support Dr. Bacon's opinion about the plaintiff's restrictions. Likewise, the ALJ conceded that the report of Mr. Smith, if supported by the evidence, "would preclude competitive work…by definition." (DE 9, p. 65). However, the record provides substantial evidence that the ALJ appropriately considered the evidence and found that it did not support Mr. Smith's opinion. Therefore, the record provides substantial evidence that the ALJ's questions portrayed the plaintiff's limitations to the extent that the record supported the source opinions regarding the plaintiff's limitations.

Therefore, the record provides substantial evidence that the ALJ did not err in determining the plaintiff's RFC, and that the ALJ's assessments of Dr. Bacon's and Mr. Smith's opinion affected the RFC determination to the extent that the ALJ assigned the opinions weight in compliance with 20 C.F.R. §§ 404.1545(a)(3) and 404.1527(c). The record provides substantial evidence that the ALJ properly assessed the plaintiff's limitations by examining the relevant evidence in the record, following the treating physician rule as it applied, and accurately portraying the plaintiff's impairments to the VE.

**B.      The Plaintiff Credibility Determination is not Supported by Substantial Evidence**

The plaintiff argues that the ALJ did not properly evaluate the plaintiff's credibility. Specifically, the plaintiff argues that the ALJ erred by basing his determination on the fact that the plaintiff could "perform some activity on a very minimal basis…" while "ignor[ing] the medical evidence which show[ed] that the [p]laintiff [was] disabled." (DE 11, p. 9).

When the ALJ considers the plaintiff's credibility and the plaintiff's symptoms in the context of making the disability determination, they use a two-part process for symptom

evaluation. SSR 96-7P, 1996 WL 374186. First, "the [ALJ] must consider whether there is an underlying medically determinable physical or mental impairment…that could reasonably be expected to produce the individual's…symptoms." Next, "the [ALJ] must evaluate the intensity, persistence, and limiting effects of the…symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7P, 1996 WL 374186. A plaintiff's symptoms will limit their ability to do basic work activities to the extent that the symptoms can reasonably be accepted as consistent with objective medical evidence. However, objective evidence alone does not always reflect the severity of symptoms. When information other than objective evidence is needed to determine the credibility of a plaintiff's statements about their symptoms, the ALJ must also consider seven specific factors. 20 C.F.R. § 404.1529(c). The factors are: (1) daily activities; (2) location, duration, frequency, and intensity; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment; (6) measures to relieve pain or other symptoms; and (7) factors concerning functional limitations and restrictions. 20 C.F.R. § 404.1529(c).

"[Plaintiff] [c]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 755 (6th Cir. 2012) (quoting *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 652 (6th Cir.2009)) (internal quotation marks and alterations omitted). The ALJ's plaintiff credibility determinations "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Torres*, 490 F. App'x at 755 (6th Cir. 2012) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997)). However, "[i]n light of…***uncontradicted*** and overwhelming medical and lay evidence" of a plaintiff's symptoms, a court may "decline to give substantial deference to [an] ALJ's ***unexplained*** credibility finding."

*King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984) (emphasis added). In other words, when "uncontroverted medical evidence in the record is entirely *consistent* with a witness's testimony, an ALJ may not disregard that evidence…." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (citing *Harris ex rel Harris v. Heckler,* 756 F.2d 431, 436 (6th Cir.1985)). However, when there is conflicting medical evidence, and ALJ "must necessarily make credibility determinations." *Anthony*, 266 F. App'x at 460 (citing *King,* 742 F.2d at 974). When an "ALJ [has] considered the evidence in the record and provided specific reasons for [their] credibility findings, [their] decision is entitled to great deference and ***is supported by substantial evidence***." *Anthony*, 266 F. App'x at 460 (emphasis added).

The record shows that the ALJ properly evaluated the plaintiff's credibility and supported his determination with substantial evidence. To the extent the plaintiff argues that the ALJ only considered the plaintiff's ability to perform activities of daily living and ignored evidence of disability, this argument lacks merit. Instead, at step 4, the record shows that the ALJ used the required two-step process as provided for in SSR 96-7P, 1996 WL 374186. The ALJ first found that "the [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." The record shows that, for the ALJ to make this determination, he relied on and did not ignore objective medical evidence. As described above,[11] the ALJ reviewed results of MRI testing, the plaintiff's reported symptoms, providers' diagnoses, physical examination reports, range of motion, prescriptions, and electrodiagnostic testing results (DE 9, pp. 35-37). The ALJ proceeded to step two of the analysis and found a lack of credibility, noting that the plaintiff's symptoms were "not credible to the extent they [were] inconsistent with the above RFC." Instead of relying solely on objective medical evidence, which alone does not

---

11 *See Supra* Part.IV.A.

always reflect the severity of symptoms, the plaintiff considered the required factors under 20 C.F.R. § 404.1529(c).

The record shows that the ALJ considered the plaintiff's (1) daily activities at great length. He considered the plaintiff's testimony that she could "bathe and dress independently," "occasionally visit friends," and "perform household chores." (DE 9, p. 34). The ALJ also heard testimony from the plaintiff indicating that she cooks, does housework, and does laundry, but that she is unable to do these simultaneously because of her back pain and the numbness in her hands (DE 9, pp. 51-56). The ALJ considered the (2) location, duration, frequency, and intensity of the plaintiff's symptoms. He considered that she had carpal tunnel in her hands, and that the symptoms of numbness and tingling extend to her elbows, that she has "constant low back pain, which sometimes radiates down both legs," that "her back pain occurs every day," and that she "has crying spells about twice a month." (DE 9, p. 34). The ALJ considered (3) precipitating and aggravating factors, noting that the plaintiff has to rest after certain amounts of exertion.[12] The ALJ considered the (4) type, dosage, effectiveness, and side effects of medication, noting that the plaintiff took Lortab, Soma, Hydrocodone, Wellburtrin, Effexor, Xanax, Skelazin, and Relafen (DE 9, pp. 34-36). The ALJ also noted that the plaintiff denied side effects from the medication (DE 9, p. 34). The ALJ considered (5) treatment regimens, including treatment "for lower back pain and pain in [the plaintiff's] hands…," wearing a split, or wearing a back brace (DE 9, pp. 34-35; 338; 361). The ALJ considered (6) measures to relieve pain or other symptoms, including resting and reclining (DE 9, p. 34).

Therefore, the record provides substantial evidence that the ALJ properly evaluated the plaintiff's credibility and did not ignore evidence. The record provides substantial evidence that there was not "uncontroverted medical evidence in the record" that was "entirely consistent with

---

12 *Id.*

[the plaintiff's] testimony, and that the ALJ therefore appropriately made a credibility determination. Finally, the record provides substantial evidence that the ALJ considered all of the evidence in the record, including the factors required under 20 C.F.R. § 404.1529(c), and that his determination is both entitled to great deference and supported by substantial evidence.

## V.    Conclusion

The record provides substantial evidence to support the Commissioner's findings of fact and the Commissioner applied the correct legal standard.

## VI.    Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the plaintiff's motion (DE 11) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this <u>13th</u> day of August, 2013.


s/Joe B. Brown_____
Joe B. Brown
U.S. Magistrate Judge